UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | No. 1:17-CR-00176-PLM-2 |
| Plaintiff, | |
| v. | Hon. Paul L. Maloney<br>United States District Judge |
| TIRRELL PERRY THOMAS, | |
| Defendant. _____/ | |

## PLEA AGREEMENT

This constitutes the plea agreement between Tirrell Perry Thomas and the United States Attorney's Office for the Western District of Michigan. The terms of the agreement are as follows:

1.  <u>Defendant Agrees to Plead Guilty</u>. The defendant agrees to plead guilty to Counts 1 and 3 of the Indictment. Count 1 charges the defendant with Conspiracy to Commit Bank Fraud, in violation of Title 18, United States Code, Sections 1349 and 1344(2). Count 3 charges the defendant with Bank Fraud, in violation of Title 18, United States Code, Sections 1344(2) and (2).

2.  <u>Defendant Understands the Crimes</u>.

<u>Count 1</u>: In order for the defendant to be guilty of violating Title 18, United States Code, Sections 1349 and 1344(2), the following must be true: (A) Two or more people conspired (agreed) to execute a scheme to obtain, by means of materially false pretenses and representations, money that was owned by or under the custody or

control of Bank of America, N.A.; and (B) Defendant knowingly and voluntarily joined the conspiracy.

Count 3: In order for the defendant to be guilty of violating Title 18, United States Code, Sections 1344(2) and (2), the following must be true: (A) the defendant knowingly executed, or attempted to execute, a scheme to obtain money owned by or in the control of a financial institution by means of false or fraudulent pretenses, representations, or promises; (B) the scheme included a material misrepresentation or concealment of a material fact; (C) the defendant had the intent to defraud; and (D) the financial institution was federally insured. The defendant may also be guilty of Count 2 if he aided and abetted (intentionally helped or encouraged) another person to commit the crime of bank fraud.

The defendant is pleading guilty because the defendant is guilty of the charges described above.

3. Defendant Understands the Penalties.

Counts 1 and 3: The statutory maximum sentence that the Court can impose on each count is the following: 30 years in prison; five years of supervised release; a $1 million fine; mandatory restitution; and a mandatory special assessment of $100. The defendant agrees to pay the special assessments at or before the time of sentencing unless the defendant affirmatively demonstrates to the Court that he lacks the ability to pay.

4. <u>Mandatory Restitution</u>. The defendant understands that he will be required to pay full restitution as required by law. The defendant agrees that the restitution order is not restricted to the amounts alleged in the count to which the defendant is pleading guilty. The parties currently believe that the applicable amount of restitution is approximately $209,361.72, but recognize and agree that this amount could change based on facts that come to the attention of the parties prior to sentencing.

5. <u>Supervised Release Defined</u>. Supervised release is a period of time following imprisonment during which the defendant will be subject to various restrictions and requirements. The defendant understands that if he violates one or more of the conditions of any supervised release imposed, he may be returned to prison for all or part of the term of supervised release, which could result in the defendant serving a total term of imprisonment greater than the statutory maximum stated above.

6. <u>Factual Basis for Plea</u>. The defendant and the U.S. Attorney's Office agree and stipulate to the following facts that establish the defendant's guilt beyond a reasonable doubt and constitute relevant conduct pursuant to U.S.S.G. § 1B1.3, which facts need not be proven at the time of the defendant's plea or sentencing:

In the fall of 2015, the Defendant knowingly and voluntarily agreed with others in Michigan and Illinois to participate in a scheme to fraudulently obtain money that belonged to, or was under the custody or control of, Bank of America

3

("BOA"), a federally insured financial institution. The Michigan aspect of the scheme involved the recruitment of individuals to open BOA bank accounts, or to use existing BOA bank accounts, to defraud BOA. The recruiters included the defendant and co-defendants Nickolas Fry, Jerome Perry, Josiah Preston, and James Langford.

Throughout his participation in the scheme to defraud BOA, the defendant understood that it worked as follows: the defendant or one of the other Michigan recruiters identified an individual who had an existing BOA bank account, or who was willing to open a new BOA bank account for use in the fraudulent scheme. Once a BOA bank account was opened, or made available for use in the scheme, the defendant provided the BOA accountholder's personal identifiers and BOA account number to co-conspirators in and around Chicago. One or more Chicago co-coconspirators then deposited fraudulent checks into the BOA bank accounts by using "virtual teller machines" (a form of Automated Teller Machine) located in Chicago. The fraudulent checks falsely represented to BOA that the named payor (usually a business) made the check payable to one of the individuals who had recently opened or already had an account at BOA in Michigan.

Following the deposit of the fraudulent checks into the BOA accountholder's bank accounts, the defendant worked with the other recruiters to facilitate the withdrawal of fraudulently obtained funds from the respective BOA accountholder's bank accounts. In addition to accompanying recruiters and BOA accountholders to FireKeepers Casino, in Calhoun County, Michigan, where BOA accountholders made

4

fraudulent cash advances from their respective BOA bank accounts, the defendant rented vehicles to provide transportation for the recruiters and BOA accountholders to travel to casinos and banks throughout Michigan to conduct fraudulent transactions.

After a BOA accountholder fraudulently withdrew money as part of the scheme, the defendant collected it and divided the money into varying amounts that went to the BOA accountholder, the direct recruiter, the defendant himself, and the Chicago co-conspirators.

The defendant agrees that, on November 30, 2015, co-defendant Earl Lee Cobb, IV, used a BOA virtual teller machine in Chicago to deposit a fraudulent check in the amount of $19,475.70 into co-defendant Kevin Hunter's BOA account. On December 1, 2015, the defendant went to FireKeepers Casino with co-defendants Nickolas Fry and Kevin Hunter, for the purpose of committing a fraudulent cash advance from Hunter's BOA account. At around 4:30 a.m., co-defendant Fry accompanied Hunter into the casino. The defendant entered the casino separately around the same time and waited for Fry and Hunter while Hunter conducted a fraudulent cash advance transaction from his BOA account, resulting in a total withdrawal of $9,951.

The defendant admits that he aided and abetted co-defendant Hunter's execution of the bank fraud by coordinating with Chicago co-conspirators to have a fraudulent check deposited into Hunter's BOA account so that Hunter could withdraw the funds. The defendant agrees that the aforementioned cash advance

5

transaction was a material misrepresentation to BOA because co-defendant Hunter falsely claimed entitlement to the funds that co-defendant Cobb fraudulently deposited into Hunter's BOA account. The defendant acted with the intent to defraud because he knew that the money Hunter withdrew from his BOA bank account did not belong to Hunter, to the defendant, or to their co-defendants, and that neither the defendant nor his co-defendants had lawful right to the money.

7. <u>Acceptance of Responsibility</u>. The U.S. Attorney's Office agrees not to oppose the defendant's request for a two-level reduction of his offense level for acceptance of responsibility under Section 3E1.1(a) of the Sentencing Guidelines. However, the U.S. Attorney's Office reserves the right to object to the defendant's request if it subsequently learns of conduct by the defendant that is inconsistent with the criteria set forth in the Commentary to Section 3E1.1. Should the Court grant a two-level reduction as provided herein, the Government will move the Court to grant an additional one-level reduction if the adjusted offense level is 16 or greater pursuant to Section 3E1.1(b).

8. <u>Dismissal of Other Counts</u>. The U.S. Attorney's Office agrees to move to dismiss the remaining counts of the Indictment against the defendant at the time of sentencing. The defendant agrees, however, that at sentencing the Court may consider the dismissed counts in determining the applicable Sentencing Guidelines range, where the sentence should fall within the applicable guidelines range, and the propriety of any departure or variance from the calculated guidelines range. The

defendant does not concede that an increased sentence or an upward departure or variance is, in fact, warranted.

9. <u>The Sentencing Guidelines</u>. The defendant understands that, although the United States Sentencing Guidelines (the "Guidelines") are not mandatory, the Court must consult the Guidelines and take them into account when sentencing the defendant. The defendant understands that the Court, with the aid of the presentence report, will determine the facts and calculations relevant to sentencing. The defendant understands that the defendant and the defendant's attorney will have the opportunity to review the presentence report and to make objections, suggestions, and recommendations concerning the calculation of the Guidelines range and the sentence to be imposed. The defendant further understands that the Court shall make the final determination of the Guidelines range that applies in this case, and may impose a sentence within, above, or below the Guidelines range, subject to the statutory maximum penalties described elsewhere in this Agreement. The defendant further understands that disagreement with the Guidelines range or sentence shall not constitute a basis for withdrawal of the plea.

10. <u>There is No Agreement About the Final Sentencing Guidelines Range</u>. The defendant and the U.S. Attorney's Office have no agreement as to the applicable Sentencing Guidelines factors or the appropriate Guidelines range. Both parties reserve the right to seek any sentence within the statutory maximum, and to argue

7

for any criminal history category and score, offense level, specific offense characteristics, adjustments and departures.

11. <u>Waiver of Constitutional Rights</u>. By pleading guilty, the defendant gives up the right to persist in a plea of not guilty and the right to a speedy and public trial by jury or by the Court. As a result of the defendant's guilty plea, there will be no trial. At any trial, whether by jury or by the Court, the defendant would have had the following rights:

    a. The right to the assistance of counsel, including, if the defendant could not afford an attorney, the right to have the Court appoint an attorney to represent the defendant.

    b. The right to be presumed innocent and to have the burden of proof placed on the Government to prove the defendant guilty beyond a reasonable doubt.

    c. The right to confront and cross-examine witnesses against the defendant.

    d. The right, if the defendant wished, to testify on the defendant's own behalf and present evidence in opposition to the charges, including the right to call witnesses and to subpoena those witnesses to testify.

    e. The right not to be compelled to testify, and, if the defendant chose not to testify or present evidence, to have that choice not be used against the defendant.

By pleading guilty, the defendant also gives up any and all rights to pursue in this Court or on appeal any affirmative defenses, Fourth Amendment or Fifth Amendment claims, and other pretrial motions that have been filed or could be filed.

12. **FOIA Requests**. The defendant waives all rights, whether asserted directly or by a representative, to request or receive from any department or agency of the United States any records pertaining to the investigation or prosecution of this case, including without limitation any records that may be sought under the Freedom of Information Act, 5 U.S.C. § 552, or the Privacy Act of 1974, 5 U.S.C. § 552a.

13. **The Court is not a Party to this Agreement**. The defendant understands that the Court is not a party to this agreement and is under no obligation to accept any recommendation by the U.S. Attorney's Office or the parties regarding the sentence to be imposed. The defendant further understands that, even if the Court ignores such a recommendation or imposes any sentence up to the maximum established by statute, the defendant cannot, for that reason, withdraw his guilty plea, and he will remain bound to fulfill all his obligations under this agreement. The defendant understands that no one—not the prosecutor, the defendant's attorney, or the Court—can make a binding prediction or promise regarding the sentence the defendant will receive, except that it will be within the statutory maximum.

14. **This Agreement is Limited to the Parties**. This agreement is limited to the U.S. Attorney's Office for the Western District of Michigan, and cannot bind any other federal, state, or local prosecuting, administrative, or regulatory authority. This

agreement applies only to crimes committed by the defendant. This agreement does not apply to or preclude any past, present, or future forfeiture or civil actions.

15.  <u>Consequences of Breach</u>. If the defendant breaches any provision of this agreement, including any promise of cooperation, whether before or after sentencing, the United States shall have the right to terminate this agreement, or deny any or all benefits to which the defendant would otherwise be entitled under the terms of this agreement. In the event that the United States elects to terminate this agreement, the agreement shall be considered null and void, and the parties shall return to the same position they were in prior to the execution of this agreement, as though no agreement ever existed. In such an event, the defendant shall remain liable for prosecution on all original charges, and the United States shall be free to bring such additional charges as the law and facts warrant. The defendant further agrees to waive and forever give up his right to raise any claim that such a prosecution is time-barred if the prosecution is brought within one year of the breach that gives rise to the termination of this agreement.

16.  <u>This is the Complete Agreement</u>. This agreement has been entered into by both sides freely, knowingly, and voluntarily, and it incorporates the complete understanding between the parties. No other promises have been made, nor may any additional agreements, understandings or conditions be entered into unless in a writing signed by all parties or on the record in open court.

17. <u>Deadline for Acceptance of Agreement</u>. If a copy of this agreement, executed by the defendant and defense counsel, is not returned to the U.S. Attorney's Office by November 28, 2017, this agreement will be withdrawn automatically and will thereafter have no legal effect or force, unless the U.S. Attorney's Office, in its sole discretion, chooses to accept an executed agreement after that date.

ANDREW BYERLY BIRGE
United States Attorney

_11/30/17_
Date

_Kate Zell_
KATE ZELL
Assistant United States Attorney

    I have read this agreement and carefully discussed every part of it with my attorney. I understand the terms of this agreement, and I voluntarily agree to those terms. My attorney has advised me of my rights, of possible defenses, of the sentencing provisions, and of the consequences of entering into this agreement. No promises or inducements have been made to me other than those contained in this agreement. No one has threatened or forced me in any way to enter into this agreement. Finally, I am satisfied with the representation of my attorney in this matter.

_11/30/17_
Date

_[signature]_
TIRRELL PERRY THOMAS
Defendant

    I am Tirrell Perry Thomas's attorney. I have carefully discussed every part of this agreement with my client. Further, I have fully advised my client of his rights, of possible defenses, of the sentencing provisions, and of the consequences of entering into this agreement. To my knowledge, my client's decision to enter into this agreement is an informed and voluntary one.

_11/30/17_
Date

_Helen C. Nieu_
HELEN C. NIEUWENHUIS
Attorney for Defendant

11