```
 1                  IN THE UNITED STATES DISTRICT COURT
                  FOR THE WESTERN DISTRICT OF MICHIGAN
 2                           SOUTHERN DIVISION

 3       _____

 4       UNITED STATES OF AMERICA,

 5                       Plaintiff,

 6            v.                          CASE NO:  1:17-CR-176

 7       TIRRELL PERRY THOMAS,

 8                       Defendant.

 9       _____/

10

11                           *   *   *   *

12                       CHANGE OF PLEA HEARING

13                           *   *   *   *

14

15       BEFORE:    THE HONORABLE ELLEN S. CARMODY
                    United States Magistrate Judge
16                  Grand Rapids, Michigan
                    December 1, 2017
17
         APPEARANCES:
18
                 APPEARING ON BEHALF OF THE PLAINTIFF:
19
                 KATE ZELL
20               Assistant United States Attorney
                 P.O. Box 208
21               Grand Rapids, Michigan  49501-0208

22               APPEARING ON BEHALF OF THE DEFENDANT:

23               HELEN C. NIEUWENHUIS
                 Federal Public Defender
24               50 Louis Street, N.W., Suite 300
                 Grand Rapids, Michigan  49503-2633
25
```

```
 1              Grand Rapids, Michigan

 2              December 1, 2017

 3              at approximately 3:02 p.m.

 4                  PROCEEDINGS

 5         COURT CLERK:  Court calls Case 1:17-CR-176; USA vs.

 6    Tirrell Perry Thomas.

 7         THE COURT:  Good afternoon.  Would counsel please

 8    put your appearances on the record.

 9         MS. ZELL:  Good afternoon, your Honor.  Kate Zell

10    for the United States.

11         THE COURT:  Good afternoon.

12         MS. NIEUWENHUIS:  And Helen Nieuwenhuis on behalf

13    of Mr. Thomas, who is here as well.

14         THE COURT:  Good afternoon, Miss Nieuwenhuis, and

15    good afternoon to you, Mr. Thomas.

16         And it's nice to see you.  You don't have the boot

17    anymore.

18         MS. NIEUWENHUIS:  That is correct.

19         THE COURT:  When did you get out of the boot?

20         MS. NIEUWENHUIS:  Oh, quite awhile ago.

21         THE COURT:  Okay.  Maybe I've seen you since.

22         MS. NIEUWENHUIS:  Oh, yep.

23         THE COURT:  Miss Nieuwenhuis, I have been advised

24    that your client, Mr. Thomas, intends to enter a plea of

25    guilty today, to which count of the Indictment?
```

10:34:13 (line 5)
11:06:22 (line 10)
11:06:34 (line 15)
11:06:56 (line 20)
11:07:11 (line 25)

1              MS. NIEUWENHUIS:  One and three.

2              MS. ZELL:  One and three, your Honor.

3              THE COURT:  Okay.  All right.  One and three.

4              MS. NIEUWENHUIS:  Uh-huh.

11:07:27  5         THE COURT:  And pursuant to a plea agreement; is

6    that correct?

7              MS. NIEUWENHUIS:  That is correct, your Honor.

8              MS. ZELL:  Yep.

9              THE COURT:  And Mr. Thomas, I'm going to talk to

11:07:37  10   you about your rights in some detail.  I'll be talking to

11   you about what the charges are you intend to plead guilty to

12   today, and what the penalties for those could be.  And the

13   first thing I want to remind you is you do have the right to

14   remain silent.  You do not have to say anything to anyone

11:07:59  15   about the charges against you, you don't have to say

16   anything to me, you don't have to say anything to anyone

17   from law enforcement or anyone else.  However, if you enter

18   a guilty plea, you'll be giving up that right, because I

19   have to do what is called establish a fact basis for your

11:08:21  20   plea.  So I will need to ask you what you did that makes you

21   guilty.  Understood, sir?

22              THE DEFENDANT:  Yes, your Honor.

23              THE COURT:  Are you willing to give up your right

24   to remain silent for purposes of entering a guilty plea to

11:08:36  25   Counts One and Three of the Indictment?

```
 1              THE DEFENDANT:  Yes.

 2              THE COURT:  All right.  If you would kindly stand

 3    and raise your right hand, my deputy clerk will put you

 4    under oath.

 5              TIRRELL PERRY THOMAS  -  DEFENDANT  -  SWORN

 6              THE COURT:  All right.  Mr. Thomas, because you are

 7    under oath, if you say anything that you know is false

 8    during this hearing and it's important, that could subject

 9    you to penalties for perjury.  Understood?

10              THE DEFENDANT:  Yes.

11              THE COURT:  All right.  Now, is your full name, in

12    fact, Tirrell Perry Thomas?

13              THE DEFENDANT:  Yes.

14              THE COURT:  Is it spelled correctly in the

15    Indictment?

16              THE DEFENDANT:  Yes.

17              THE COURT:  And how old are you, sir?

18              THE DEFENDANT:  Thirty-eight.

19              THE COURT:  Okay.  And how far did you get in

20    school?

21              THE DEFENDANT:  GED.

22              THE COURT:  All right.  Able to read, write, and

23    understand English okay?

24              THE DEFENDANT:  Yes.

25              THE COURT:  Okay.  You do have the right to have a
```

11:08:57 (line 5)
11:09:13 (line 10)
11:09:24 (line 15)
11:09:33 (line 20)
11:09:39 (line 25)

 1    United States district judge conduct your case -- or conduct

 2    this hearing, and the district judge assigned to your case

 3    is the Honorable Paul Maloney.  And a district judge is a

 4    judge who has been appointed under our United States

11:10:02  5    Constitution for life.

 6          I am a magistrate judge, and I have been appointed

 7    for a term of years under a federal statute.  I will be

 8    making a report and recommendation to Judge Maloney as to

 9    whether or not to accept your plea, but you are entitled to

11:10:22 10    have him conduct this hearing, unless you freely choose or

11    consent to my doing so.  Do you understand that, sir?

12          THE DEFENDANT:  Yes.

13          THE COURT:  And do you so consent?

14          THE DEFENDANT:  Yes.

11:10:33 15          THE COURT:  Miss Nieuwenhuis, did you both read and

16    sign the consent form?

17          MS. NIEUWENHUIS:  We did, your Honor, yes.

18          THE COURT:  All right.  Now, is there anything

19    wrong with you today, Mr. Thomas, either physically or

11:10:49 20    mentally that would make it difficult for you to follow what

21    is going on here?

22          THE DEFENDANT:  No.

23          THE COURT:  Have you had any prescription

24    medication or any other substance in the last 24 hours that

11:11:02 25    would make you sleepy, dizzy, drowsy, confused, anything

```
    1    like that?

    2              THE DEFENDANT:  No.

    3              THE COURT:  And have you been given a copy of the

    4    Indictment against you?

11:11:15    5              THE DEFENDANT:  Yes.

    6              THE COURT:  Have you had the chance to read that

    7    and discuss that with your attorney, Miss Nieuwenhuis?

    8              THE DEFENDANT:  Yes.

    9              THE COURT:  Will he waive the reading if I

11:11:24   10    summarize the crimes for him and the elements of Counts One

   11    and Three?

   12              MS. NIEUWENHUIS:  He will, your Honor.

   13              THE COURT:  All right.

   14              Mr. Thomas, Count One charges you with a conspiracy

11:11:39   15    to commit bank fraud.  And the government would have to

   16    prove each of the following beyond a reasonable doubt to

   17    prove you guilty of that crime.

   18              First, that you agreed with at least one other

   19    person to execute a scheme to obtain by means of material

11:12:05   20    false pretenses and representations money that was owned by

   21    or under the custody and control of the Bank of America.

   22    And second, that you knowingly and voluntarily joined the

   23    conspiracy.

   24              Count Three charges you with one count of actual

11:12:32   25    bank fraud, and to prove you guilty of that count, the
```

1       government would have to prove each of the following beyond

2       a reasonable doubt:

3               That you knowingly executed or attempted to execute

4       a scheme to obtain money owned or by-- by or in the control

11:12:57  5     of a financial institution by means of false or fraudulent

6       pretenses, representations, or promises.

7               Second, that the scheme included a material

8       misrepresentation or concealment of a material fact.  Third,

9       that you had the intent to defraud.

11:13:20 10             And fourth, that the financial institution was

11      federally insured.

12              This is puzzling to me in the plea agreement.

13              MS. ZELL:  I apologize.  It should actually say of

14      Count Three, if he aided and abetted.

11:13:44 15             THE COURT:  Okay.  Do you want to amend that or?

16              MS. ZELL:  No, Section 2 was alleged as well, so

17      Section 2 applies to both, but helping others execute the

18      actual withdrawal of money, so the conspiracy.

19              THE COURT:  Okay.

11:14:09 20             MS. ZELL:  Yes.  So if he drove someone to a

21      casino, but they actually committed the withdrawal.

22              THE COURT:  Okay.  That should be Count Three then?

23              MS. ZELL:  Yes, exactly.  Sorry, it should say

24      Count Three right there.  And my apologies.

11:14:24 25             THE COURT:  That's all right.  I just was a little

```
 1    puzzled.

 2          You could also be guilty of Count Three, if you

 3    aided and abetted.  What that means is intentionally helped

 4    or encouraged another person to commit the crime of bank

 5    fraud.  So and the penalties on these charges, I think they

 6    are both exactly the same, let me see.

 7          MS. ZELL:  That is correct.

 8          THE COURT:  On Count one, the conspiracy to commit

 9    bank fraud, the maximum penalty is not more than 30 years in

10    prison and/or up to a $1 million fine.  Supervised release

11    of not more than five years.

12          Supervised release is a period of time after you

13    would be released from custody when you would still have to

14    follow certain rules set out by the Court.  And if you

15    failed to follow those rules, you could be returned to

16    custody for up to your entire term of supervised release.

17    There is also a special assessment of $100, and mandatory

18    restitution is required.

19          Do you have an estimate on that, Miss Zell.

20          MS. ZELL:  Yes, Paragraph 4 of the plea agreement.

21    the parties presently believe that the restitution amount is

22    approximately $209,000 -- $209,361.72.

23          THE COURT:  All right.  And Count Three the maximum

24    penalty is exactly the same as for Count One.

25          Now, I don't want you to say anything about the
```

11:14:41  (line 5)
11:15:07  (line 10)
11:15:28  (line 15)
11:15:54  (line 20)
11:16:24  (line 25)

1    charge at this time, but I do want to know, do you think you

2    understand what you've been charged with?

3              THE DEFENDANT:  Yes.

4              THE COURT:  And do you think you understand what

11:16:37    5    the penalties for those counts could be?

6              THE DEFENDANT:  Yes.

7              THE COURT:  All right.  Now, you also are entitled

8    to have an attorney represent you at every stage of this

9    proceeding against you.  You were free to hire your own

11:16:55   10    attorney, however, you did--

11              Were you retained or appointed?

12              MS. NIEUWENHUIS:  I was appointed, your Honor, yes.

13              THE COURT:  All right.  You qualified financially

14    when you requested court-appointed counsel, and Miss

11:17:11   15    Nieuwenhuis was appointed to represent you at no charge to

16    you.

17              I was thinking back to your private practice days,

18    sometimes you were retained and sometimes you were

19    appointed.

11:17:25   20              MS. NIEUWENHUIS:  That's right.

21              THE COURT:  Have you had the chance to talk with

22    Miss Nieuwenhuis thoroughly about the charges against you

23    and your decision to plead guilty today and what your other

24    choices might be?

11:17:41   25              THE DEFENDANT:  Yes.

```
 1              THE COURT:  And have you had the chance to ask her
 2    any questions you've had about any of those things?
 3              THE DEFENDANT:  Yes.
 4              THE COURT:  Has he--  Has she answered those
 5    questions to your satisfaction?
 6              THE DEFENDANT:  Yes.
 7              THE COURT:  Have you generally been satisfied with
 8    her services to date?
 9              THE DEFENDANT:  Yes.
10              THE COURT:  Has she had the chance to talk with you
11    about the sentencing guidelines and how those might apply to
12    your case?
13              THE DEFENDANT:  Yes.
14              THE COURT:  And Miss Nieuwenhuis has worked for
15    many years with our sentencing guidelines and she can make
16    what I would call an educated guess about what your
17    guideline range might be, but do you understand that she
18    does not know that for certain, nor does Miss Zell, nor do
19    I?
20              THE DEFENDANT:  Yes.
21              THE COURT:  Okay.  And that will require the
22    preparation of a presentence report.  Do you understand
23    that?
24              THE DEFENDANT:  Yes.
25              THE COURT:  And Judge Maloney will be guided by the
```

11:17:52   (line 5)
11:18:01   (line 10)
11:18:15   (line 15)
11:18:33   (line 20)
11:18:41   (line 25)

1    guidelines, he is not bound by them.  And once your

2    presentence report has been prepared, Judge Maloney -- you

3    can file objections, you and the government both, about

4    anything that you think in the report that is wrong or

11:19:06  5    inaccurate.  Do you understand that?

6              THE DEFENDANT:  Yes.

7              THE COURT:  Now, after it's been determined what

8    guideline applies to your case after Judge Maloney has

9    resolved any objections, if there is any objections-- are

11:19:25  10   any objections, under some circumstances, you and the

11   government would have the right to appeal any sentence that

12   is imposed; is that correct?  Do you understand that?

13             THE DEFENDANT:  Yes.

14             THE COURT:  Miss Zell, has he given up some of

11:19:44  15   those appellate rights in his plea agreement?

16             MS. ZELL:  Just the traditional waiver of

17   constitutional rights is in 11.  There is no specific

18   appellate waiver in the plea agreement.

19             THE COURT:  Okay.  Because I usually have folks go

11:20:02  20   over those.

21             I may have said this to you before, but I would

22   rather err on the side of caution.

23             Do you understand that once it's decided what your

24   guideline range is, under some circumstances, Judge Maloney

11:20:22  25   could impose a sentence that is more severe or less severe

         1    than that called for by the guideline?

         2            THE DEFENDANT:  Yes.

         3            THE COURT:  Okay.  I imagine you and Miss

         4    Nieuwenhuis have talked about what you hope your sentence

11:20:38 5    might be or what you hope it might be approximately, but do

         6    you understand that if it is more severe than what you

         7    expected or hoped, that that by itself is not a reason to

         8    withdraw your plea?

         9            THE DEFENDANT:  Yes.

11:20:53 10           THE COURT:  There is something called parole that

        11    exists in the state system, that does not exist in the

        12    federal system anymore.  And if you're sentenced to a term

        13    of custody, you can earn time off for good behavior, but you

        14    will not be released early on parole.  Do you understand

11:21:14 15   that?

        16            THE DEFENDANT:  Yes.

        17            THE COURT:  Do you also understand that once you

        18    have pled guilty to a felony, that might impact certain

        19    other valuable civil rights you have, such as the right to

11:21:31 20   vote, the right to hold public office, the right to serve on

        21    a jury, and the right to possess a firearm?

        22            THE DEFENDANT:  Yes.

        23            THE COURT:  Okay.  You have the right to plead not

        24    guilty and to persist in that plea.  You have the right to a

11:21:48 25   trial by a jury with the assistance of your attorney.  You

1    have been given or would be given at least 30 days to

2    prepare for trial.  You have the right to confront and cross

3    examine witnesses against you, and to call witnesses to

4    testify for you.  And you have the right to have the Court

11:22:09  5    issue court orders called subpoenas, forcing witnesses to

6    come to the trial if you think they will have testimony that

7    is helpful to you.  And you have the right to have your

8    attorney do all of those things at no charges to you.

9           You also have the right not to be compelled to

11:22:29 10    incriminate yourself, that's a different way of saying the

11    right to remain silent.  What that means is the government

12    cannot force you to testify to prove its case against you,

13    and the government cannot say anything bad about you to

14    either the jury or the judge if you choose not to testify.

11:22:52 15    However, you have the right to testify at a trial if you

16    freely choose to do so.

17           You are presumed to be innocent of the charges

18    against you, and the government has the burden of proving

19    you guilty of each element of each charge beyond a

11:23:08 20    reasonable doubt.

21           Now, if you enter a guilty plea, there will be no

22    further trial of any kind.  By entering this type of a plea,

23    you give up your right to a trial by a jury or a judge.  You

24    give up your right against self incrimination, because I'll

11:23:27 25    be asking you what you did that makes you guilty.  And you

```
 1    give up your right to confront and cross examine witnesses

 2    against you and to call witnesses to testify for you.

 3              Now, at this time, do you have any question about

 4    any of your rights as I have explained them to you or what

 5    rights you'll be giving up?

 6              THE DEFENDANT:  No.

 7              THE COURT:  Any questions about the two crimes to

 8    which you intend to plead guilty to today?

 9              THE DEFENDANT:  No.

10              THE COURT:  Any questions about what penalties

11    could result from that?

12              THE DEFENDANT:  No.

13              THE COURT:  All right.  Would you, Miss

14    Nieuwenhuis, you and your client--

15              MS. ZELL:  Your Honor, if I may just briefly.

16              THE COURT:  Yes.

17              MS. ZELL:  Just to make sure that the defendant

18    knows that if-- he has charges pending in another case or

19    another case pending that a conviction in this case could

20    lead to revocation of supervised release in another case.

21              THE COURT:  All right.  Is he under supervision?

22              MS. ZELL:  I believe that he may or may not have

23    been under supervision in another case, but just to make

24    sure the warning is out there that there was another federal

25    case, and I'm not sure if supervision ended or not.
```

```
 1              THE COURT:  What is your opinions, Miss
 2    Nieuwenhuis?
 3              MS. NIEUWENHUIS:  I believe at the time that this
 4    happened, I think he was --
 5              You were already off?
 6              THE DEFENDANT:  Yes.
 7              THE COURT:  All right.  Well, Miss Zell was just
 8    exercising caution and wanted you to be aware of that, if
 9    that was not the case, it could have impact on that case as
10    well.
11              MS. ZELL:  All right.  Thank you.
12              THE COURT:  We would rather over inform than under
13    inform here.
14              Now, Miss Nieuwenhuis, would you and your client
15    please come up to the podium at this time?
16              MS. NIEUWENHUIS:  Yes.
17              THE COURT:  Is it your understanding, Miss
18    Nieuwenhuis, that at this time your client, Mr. Thomas, is
19    prepared to enter a plea to Counts One and Three of the
20    Indictment against him?
21              MS. NIEUWENHUIS:  That is correct, your Honor.
22              THE COURT:  And how do you plead to Count One,
23    Mr. Thomas?
24              THE DEFENDANT:  Guilty.
25              THE COURT:  And how about Count Three?
```

11:24:53
11:25:11
11:25:24
11:25:49
11:25:57

```
            1            MS. NIEUWENHUIS:  Guilty.

            2            THE COURT:  Have there been any force or threats

            3   brought against you to get you to enter a guilty plea?

            4            THE DEFENDANT:  No.

11:26:08    5            THE COURT:  Have there been any promises made to

            6   you, other than the promises in the plea agreement?

            7            THE DEFENDANT:  No.

            8            THE COURT:  After discussing it with your attorney,

            9   did you conclude that pleading guilty pursuant to your plea

11:26:33   10   agreement is in your best interests?

           11            THE DEFENDANT:  Yes.

           12            THE COURT:  Is this a voluntary and free will act

           13   on your part?

           14            THE DEFENDANT:  No.

11:26:42   15            THE COURT:  Now, I'm going to ask Miss Zell to put

           16   the pertinent portions of the plea agreement on the record.

           17   I would ask you to listen carefully, Mr. Thomas, because

           18   I'll be asking you if you think you've been promised

           19   anything else, all right?

11:34:47   20            MS. ZELL:  Thank you, your Honor.

           21            As I do so, I'll refer specifically to Paragraph 6

           22   in the plea agreement, which lays out the factual basis that

           23   the government would prove if the case went to trial.  And

           24   those facts are that in the fall of 2015, the defendant

11:35:07   25   knowingly and voluntarily agreed with others in Michigan and
```

1    Illinois to participate in a scheme to fraudulently obtain

2    money that belonged to or was under the custody and control

3    of Bank of America, which is a federally insured financial

4    institution.

11:35:25    5    The Michigan aspect of the scheme involved

6    recruiting individuals to open the Bank of America accounts

7    or use existing accounts, and the defendant was one of those

8    recruiters.

9    In the defendant's participation of this scheme,

11:35:43    10    the scheme generally worked as follows and the defendant

11    understood this:

12    That one or more Michigan recruiters would identify

13    an individual who had or would open a Bank of America

14    account for use in the fraudulent scheme.  Once that account

11:36:00    15    was opened, the defendant provided the account holders

16    personal identifiers to co-conspirators in and around

17    Chicago.  One of those Chicago co-conspirators then

18    deposited a fraudulent check into the bank account using a

19    virtual teller machine in the Chicago area, and those

11:36:21    20    fraudulent checks falsely represented to Bank of America

21    that the payer -- the named payer on the check, usually a

22    business, made the check payable to the individual who had

23    recently opened or used their Bank of America account in the

24    scheme.  After the deposit of the fraudulent checks into the

11:36:53    25    account holder's bank account, the defendant worked with

1    other recruiters to facilitate the withdrawal of those

2    fraudulently obtained funds from those account holder's bank

3    accounts.

4           In addition to actually accompanying recruiters and

11:37:12  5    account holders to Firekeepers Casino, in Calhoun County

6    Michigan, where account holders made fraudulent cash

7    advances from their bank accounts, the defendant also rented

8    vehicles to provide transportation for recruiters and

9    account holders, and those vehicles were used to travel to

11:37:33 10    casinos and banks throughout Michigan to conduct fraudulent

11    transactions.

12           After one of the account holders fraudulently

13    withdrew money as part of the scope, the defendant would

14    collect the money, divide it into varying amounts that would

11:37:48 15    go in part to the account holder, to the direct recruiter,

16    some for the defendant himself, and then some for the

17    Chicago co-conspirators.

18           And specifically, with respect to the execution

19    count, in Count Three, the defendant agrees that on November

11:38:07 20    30th, 2015, Co-Defendant Earl Lee Cobb, IV, used a Bank of

21    America virtual teller machine in Chicago to deposit a

22    fraudulent check in the amount of $19,475.70 into

23    Co-Defendant Kevin Hunter's Bank of America account.  Then

24    on December 1st, 2015, the defendant went to Firekeepers

11:38:43 25    Casino with Co-Defendants Nicholas Fry and Kevin Hunter for

1       the purpose of committing a fraudulent cash advance from

2       Hunter's Bank of America account.  At around 4:30 a.m.,

3       Co-Defendant Fry accompanied Co-Defendant Hunter into the

4       casino.  The defendant entered the casino separately around

11:39:02  5       the same time and waited for Fry and Hunter while Hunter

6       conducted a fraudulent cash advance transaction from his

7       Bank of America account, which resulted in a total

8       withdrawal from that account of $9,951.

9            The defendant aided and abetted Co-Defendant

11:39:34  10      Hunter's execution of the bank fraud by coordinating with

11      Chicago co-conspirators to have a fraudulent check deposited

12      into Hunter's bank account so that Hunter could withdraw the

13      funds.  And the defendant agrees that the cash advance

14      transaction that Hunter did on November 30th, 2015,

11:39:57  15      constituted a material misrepresentation to Bank of America

16      because Co-Defendant Hunter falsely claimed entitlement to

17      those funds that Co-Defendant Cobb deposited into the

18      account.  The defendant acted with intent to defraud because

19      he knew that the money that Hunter withdrew from his account

11:40:17  20      did not belong to Hunter, to the defendant or to any of the

21      co-defendants, and that none of the co-defendants or the

22      defendant had any lawful right to the money.

23            THE COURT:  Okay.  Thank you, Miss Zell.

24            Now, if you would tell me in own words, Mr. Thomas,

11:40:36  25      what you did that makes you guilty of a conspiracy to

```
 1   defraud the bank, and also at least one instance of

 2   defrauding the bank.

 3          THE DEFENDANT:  I aided and abetted, drove to the

 4   casinos, and helped get the money.

 5          THE COURT:  All right.  And did you understand that

 6   you-- had you agreed with at least one of the other

 7   defendants to enter into an agreement to defraud the Bank of

 8   America?

 9          THE DEFENDANT:  Yes.

10          THE COURT:  And did you-- were the facts as stated

11   by Miss Zell intentionally correct?

12          THE DEFENDANT:  Yes.

13          THE COURT:  And Count Three was the count where you

14   were charged with actually committing a fraud, and did that

15   occur on or about December 1st, 2015, when you went with

16   Mr. Fry and Mr. Hunter?

17          THE DEFENDANT:  Yes.

18          THE COURT:  And did you know when you went with

19   them to the Firekeepers Casino that they intended to get a

20   cash advance from Mr. Hunter's account?

21          THE DEFENDANT:  Yes.

22          THE COURT:  And you knew that Mr. Hunter did not

23   have the right to that money?

24          THE DEFENDANT:  Yes.

25          THE COURT:  And did you wait for Mr. Fry and
```

11:41:03  (line 5)
11:41:17  (line 10)
11:41:41  (line 15)
11:42:01  (line 20)
11:42:11  (line 25)

```
 1          Mr. Hunter while Mr. Hunter fraudulently obtained money from

 2          his -- it was actually real money, but from his BOA account

 3          resulting in a withdrawal of $9,951?

 4                  THE DEFENDANT:  Yes.

 5                  THE COURT:  And were you to receive a cut of that

 6          money?

 7                  THE DEFENDANT:  Yes.

 8                  THE COURT:  And was that for your assistance and

 9          your agreement to be part of this conspiracy?

10                  THE DEFENDANT:  Yes.

11                  THE COURT:  All right.  Miss Zell, anything

12          further--

13                  Oh, Let me ask you one more question:  Where was

14          the Firekeepers casino located?

15                  THE DEFENDANT:  Battle Creek.

16                  THE COURT:  Michigan?

17                  THE DEFENDANT:  Yes.

18                  THE COURT:  Okay.  Anything further, Miss Zell, you

19          want to ask the defendant to established a factual basis for

20          the plea?

21                  MS. ZELL:  No.  Together with what is stated in the

22          plea agreement and what he has said here, I think there is

23          sufficient factual basis.

24                  THE COURT:  And how about you, Miss Nieuwenhuis?

25                  MS. NIEUWENHUIS:  I agree there is a sufficient
```

11:42:36
11:42:46
11:42:56
11:43:06
11:43:16

1    basis, your Honor.

2           THE COURT:  All right.  Okay.  Miss Zell, I think

3    we missed a step here.

4           MS. ZELL:  Yes.

11:43:41  5        THE COURT:  Were you going to go over the other

6    portions of the plea agreement?

7           MS. ZELL:  Okay.  Thank you, your Honor.

8           Just the beginning of the plea agreement sets forth

9    the defendant's intention to plead guilty.  Paragraph 2 lays

11:44:04  10   out the elements of the crimes, which the Court has covered

11   with the defendant, and we do have that correction in the

12   paragraph respecting Count Three, that we need to change it

13   where it says Count Two to Count Three.

14          Paragraph 3 outlines the penalties for these

11:44:24  15   counts, which the Court has covered with the defendant.

16          Paragraph 4 is restitution, again, which has been

17   covered by the Court.

18          Paragraph 5 relates to supervised release, which

19   the Court explained to the defendant.

11:44:41  20        Paragraph 6 is the factual basis for the plea,

21   which we just went through.

22          Paragraph 7 is that the government agrees that if

23   the defendant's offense level is 16 or greater, that the

24   government will move for the third point for acceptance of

11:45:04  25   responsibility consistent with the caveats in that

paragraph.

Paragraph 8 is the government agrees to dismiss all of the other counts against the defendant that are in the Indictment at the time of sentencing.

11:45:22   The sentencing guidelines are summarized and their applicability in Paragraph 9.

Paragraph 10 just indicates that we have no agreement about the final sentencing guidelines range.

Paragraph 11 states certain constitutional rights

11:45:41   that the defendant agrees to waive by entering a guilty plea, which the Court has covered.

Paragraph 12 states that the defendant has agreed not to go through the FOIA request process following his guilty plea.

11:46:02   Paragraph 13 is that the Court is not a party to the agreement, just that the written agreement is between the defendant and the government, and it's up to the Court whether or not it decides to accept it.

Paragraph 14 is that this agreement is limited to

11:46:22   United States, and particularly U.S. Attorney's office for this district and the defendant.

Paragraph 15 are the consequences if the defendant breaches any provisions of the agreement.

And 16 just reflects that there are no outside

11:46:55   agreements or promises that have been made to the defendant,

```
 1    that everything is contained in the written agreement.

 2           And Paragraph 17 just states the deadline for

 3    acceptance, which in this case states November 28th, but the

 4    U.S. Attorney's Office has chosen to accept the plea

 5    agreement as it was executed by the parties on November

 6    30th, 2017.

 7           THE COURT:  All right.  Let me ask you, Miss

 8    Nieuwenhuis, is there anything additionally that you want to

 9    put on the record in terms of what the contents of the plea

10    agreement?

11           MS. NIEUWENHUIS:  No, your Honor.

12           THE COURT:  The only other thing I notice, and I

13    don't think you mentioned it, Miss Zell, unless I had a

14    little lapse, is that you will not oppose the defendant

15    seeking a two level reduction for acceptance of

16    responsibility.

17           MS. ZELL:  That is correct, your Honor.  And then

18    we will move-- yes, that is correct.  We will not oppose

19    that and we will also move for the third point.

20           THE COURT:  Okay.

21           MS. ZELL:  Thank you.

22           THE COURT:  Mr. Thomas, do you think you've been

23    promised anything else that has not been mentioned by Miss

24    Zell?

25           THE DEFENDANT:  No.
```

             1            THE COURT:  And do you agree with all parts of your

             2    agree agreement?

             3            THE DEFENDANT:  Yes.

             4            THE COURT:  Have you had the chance to read that

11:48:19     5    and go over that carefully with Miss Nieuwenhuis?

             6            THE DEFENDANT:  Yes.

             7            THE COURT:  And when you signed it, do you think

             8    you understood all of it?

             9            THE DEFENDANT:  Yes.

11:48:25    10            THE COURT:  And do you think you understand it all

            11    today?

            12            THE DEFENDANT:  Yes.

            13            THE COURT:  All right.  And it appears to me

            14    Mr. Thomas, that you signed it on or about November 30th of

11:48:49    15    this year; is that correct?

            16            THE DEFENDANT:  Yes.

            17            THE COURT:  And Miss Nieuwenhuis, it appears that

            18    you signed it on the same day?

            19            MS. NIEUWENHUIS:  Yes, that is correct.

11:48:56    20            THE COURT:  And it also appears, Miss Zell, you

            21    signed it on the same day?

            22            MS. ZELL:  Yes, that is correct.

            23            THE COURT:  I also note that it was filed on the

            24    same day, and that would be November 30th of 2017.

11:49:14    25            So I lost track of where I was, but I was-- I find

that you're-- I'm going to make a report and recommendation

to Judge Maloney that he accept your plea and adjudicate you

guilty.  I find that your plea is made knowingly, and that

you understand each of your rights that I have explained to

11:49:38  you, and that it's voluntary and free from any force,

threats, or promises, apart from your plea agreement.  And

that you understand what the charges are against you and the

penalties provided by law.  And finally, I do find the plea

has a sufficient factual basis.

11:50:00  I would expect the next thing that will happen in

your case is you will have a presentence interview at which

your attorney may be present, and Judge Maloney will decide

whether or not to accept your plea agreement after he has

had a chance to review your presentence report.

11:50:23  As I understand it, you are currently released on

bond; is that correct?

THE DEFENDANT:  Yes.

THE COURT:  And I'm going to caution you, just as I

do every defendant.  Once you've entered a plea and you're

11:50:37  awaiting sentencing, sometimes that is a very tense time for

people.  And sometimes people go off the rales.  And I have

heard of no bond violations by you, but if you have a bond

violation, you could jeopardize or harm one of the biggest

benefits you get from your plea agreement, and that is a

11:51:04  reduction in your sentencing guidelines.  So you want to

```
  1   make sure that whatever you do to relieve any tension you
  2   have, it's not something that you're forbidden to do under
  3   your bond.  Okay?
  4              THE DEFENDANT:  Yes.
  5              THE COURT:  All right.  Do you have any questions
  6   you would like to ask me, sir?
  7              THE DEFENDANT:  No.
  8              THE COURT:  I wish you good luck.
  9              Miss Nieuwenhuis, anything further?
 10              MS. NIEUWENHUIS:  No, your Honor.  Thank you.
 11              THE COURT:  And how about you, Miss Zell?
 12              MS. ZELL:  No, thank you, your Honor.
 13              THE COURT:  All right.  This matter is adjourned.
 14              Good day to all of you.
 15              COURT CLERK:  All rise, please.
 16              Court is adjourned.
 17          (At 3:31 p.m., proceedings concluded.)
 18
 19
 20
 21
 22
 23
 24
 25
```

```
 1

 2

 3                        C E R T I F I C A T E

 4

 5        I, Kathleen S. Thomas, Official Court Reporter for the

 6   United States District Court for the Western District of

 7   Michigan, appointed pursuant to the provisions of Title 28,

 8   United States Code, Section 753, do hereby certify that the

 9   foregoing is a true and correct transcript of proceedings

10   had in the within-entitled and numbered cause on the date

11   hereinbefore set forth; and I do further certify that the

12   foregoing transcript has been prepared by me or under my

13   direction.

14

15

16                         /s/

17                         _____

18                         Kathleen S. Thomas, CSR-1300, RPR
                           U.S. District Court Reporter
                           410 West Michigan
19                         Kalamazoo, Michigan   49007

20

21

22

23

24

25
```